May it please the Court, my name is Joanna Faust and I represent Virginia Poindexter. Your Honors, we're here today pursuant to the grant of summary judgment by the lower court. Your Honor, it's our argument that the District Court erred in finding that Ms. Poindexter failed to send a qualified written request, such as to sufficiently state a claim under the Real Estate Settlement Procedures Act, that the District Court furthered erred in finding that Ms. Poindexter's slander of title, breach of contract, and claim under Virginia Code 55.66.3 were time-barred, that Mercedes-Benz does not qualify as, quote, a mortgage lender, such that Ms. Poindexter cannot state a Virginia Consumer Protection Act claim. And finally, with respect to her slander of title and breach of contract claims, there was more than sufficient evidence in the record for a reasonable jury to find that she stated a case for cause of action. If they're not a mortgage lender, then you wouldn't have a claim under RESPA. Your Honor, the RESPA goes to the holder, the holder of the loan that makes or holds the loan. But you have to send a qualified written request to a servicer of a federally related mortgage line. Yes, Your Honor. We do not dispute that Mercedes-Benz was the servicer, they are the servicer, they were the servicer of the loan. But they weren't the lender, they weren't the lender itself. Because under Virginia Code 6.6, pardon me, Your Honor, under Virginia Code 6.2-1600, a mortgage lender is defined as an entity that originates or makes a mortgage loan, not a loan, not a servicer. Mercedes-Benz, I think it's undisputed, was not, they neither originated nor made the loan itself. When the loan was originally made, it was an installment loan for a car, and it was made by a non-part... And they converted it to one secured by real estate. I'm sorry, Your Honor, I didn't hear you. Wasn't it converted to one secured by real estate? Your Honor, it was assigned by HBL to Mercedes-Benz. They assigned it and pursuant to that, a deed of trust was issued. But there was no... That wouldn't be part of the assignment. I mean, the lender and, which at that point would be Mercedes-Benz, the lender and the debtor would have to agree to that. And Ms. Poindexter did agree to issue a deed of trust or to have a deed of trust put on her property itself. But Your Honor, when the deed of trust was issued, Mercedes-Benz specifically wrote that no further payments needed to be made on the loan, or that she was already making payments on the loan, and that no further payments needed to be made to get the deed of trust. Mercedes-Benz got something very valuable to them. They were able to make sure if a purchaser of this luxury car ever were to default, they would have a lien on that person's house. But there wasn't any additional monetary consideration. The loan itself was designed, and she executed the deed of trust. They became the servicer of the loan. I think that that's clear in the record and undisputed. But under the... This seems kind of odd that you'd have the servicer of a loan who's now the holder of a mortgage. Yes, sir. But for the Virginia Consumer Protection Act defines a mortgage lender under 6.2-1600 as an entity that originates or makes the mortgage loan. The loan that was made was an installment loan by HBL. They didn't originate it. Mercedes-Benz neither originated nor they made it. They were assigned it, and they took over the servicing of it. But they aren't a defined mortgage lender under the Virginia statute. So who's the servicer of the loan? Mercedes-Benz, Your Honor. And not TD Auto Financing? They are the successor in interest of TDAF, Your Honor. Because it happened several years ago, TDAF is Mercedes-Benz Credit Corp. And Mercedes-Benz Financial Service is defending or was defending the case pursuant to an agreement with TDAF. TDAF is who filed the Certificate of Satisfaction, the successor in interest to Mercedes-Benz Credit Corp. So why you've got all these different theories that you're trying, you know, you've got a slander of title claim and the Virginia Consumer Protection Act and the Real Estate Settlement Protection Act. I mean, you've got all these things you show firing with in the hope that one of them might gain some traction. But tucked there at the very end is the breach of contract claim. And was there a, well, I'm surprised you didn't make more of it. Why wasn't, why wasn't, what's the problem with a straightforward breach of contract claim? There is no problem with it, Your Honor. And we believe that that is the claim that should have survived. Because these different statutes, I have questions about whether they're really fit or applied to your situation. And I understand that, Your Honor. Part of the reason is that the different statutes provide a remedy for different types of damages, including that of attorney's fees. It should be noted that it took filing a federal suit for Mercedes-Benz International Corporation to file a Certificate of Satisfaction. Because of that, Ms. Poindexter lost the loan that she wanted to have to refinance. Now, she did eventually, seven months later, well into this suit, find a new loan that was comparable. But because of that, she lost monthly mortgage payments. I don't know whether she lost the chance to refinance because of a failure to remove the lien or whether she didn't. But that would be a question of damages, wouldn't it? It would be a question of liability. No, Your Honor. I'm sorry. I didn't mean to give that impression. That is a question of damages. But the damages that she suffered weren't just the new loan that she eventually got, which was not the loan that she was originally, and that was a disputed fact. She was denied that loan because of the cloud that was on her title. But because of that, she... Well, your point is they were under a duty to remove the lien once the debt was either satisfied or... Yes, Your Honor. Once the debt... Once she never missed a payment and once she made her last... And your view is that the failure to remove the lien once the debt was no longer in existence was a breach. Yes, sir. It was a breach, yes. She allowed a deed of trust to be put on her property in the hope that... Or in the return for which she made... Now, what about the statute of limitations argument with respect to the contract? Now, Your Honor, I would argue that with respect to that, that every day that Mercedes-Benz Credit Corporation continued to fail to release the deed of trust from the property, and it wasn't released until November of 2013, not only was that being published... But we wouldn't need a continuing breach theory here, would we? Because I think it was in May of 2013, you actually notified them. I notified... Ms. Poindexter notified her husband, the title company, and her counsel all notified them, yes. All right. Was MVCC notified that they had to remove the lien? Yes, Your Honor, they were. You're saying that's not disputed? I don't believe that is disputed, Your Honor. They were... It's included in the record, the title company's facts to them, that included the deed of trust that was still active, as well as the certified What you're saying is that the failure to act after the May 2013 notification, and the fact that they only acted after the federal suit was filed... Yes, Your Honor, after it was filed. That the failure to act and a failure to respond in a timely notice, that they had Yes, Your Honor. Yeah. Or their successor in interest was the loan servicer. Right. To remove the lien, you think that's an additional breach? I do, Your Honor. Yes, we do, Your Honor. How is that different from the breach as of the time that the debt was paid? Your Honor... There's only one contract here. There is only one real estate settlement, a retail installment contract, that was for the purchase of the automobile. Several months later, after it had been signed, was when the deed of trust was put on the property. So when your client paid it off, why wouldn't the statute of limitations start to run from that day? Because, Your Honor, they continued to fail to release it up until and through 2013. We made... How is that different from any other breach of a contract? Your Honor, I would argue because they had a continuing duty as the servicer, whether the loan was paid off or not, under the real estate settlement under RESPA, as well as under this breach of contract, they remained the loan servicer. There was no other way to get anyone to remove... Only the holder can remove the deed of trust. But the question on the breach of contract is when it starts to run, and you're looking at it from the standpoint of when a party to the contract would have done, there's no allegation here of padding the ball or some sort of a fraudulent activity. This is a public record. Not fraudulent, Your Honor, but there was a second car that was purchased in 2004 when this car was paid off. When that car was paid off, it was said that the security interest has been released. Now, I understand Mercedes's point was, well, that was for car two, not for car one. But this is an individual. This is the first and only time she ever did this. We made an argument pursuant to the equitable estoppel. I'm not arguing that it was fraud or that there was any lie there. But when an individual is told, we have no further interest in your vehicle, we have no... Well, not in the vehicle, but an a continuing cloud on her title that prevented the refinance of the property in 2000, all the way up until 2013, when is when she realized. But what, I mean, what during that period of 10 years or so, what was the barrier for your client to determine that there was a breach? There was no barrier, Your Honor. This is a public record in the Circuit Court of Loudoun County. But respectfully, it's not her duty. This isn't like a closing, a real estate closing, where everyone sits in a room and signs papers. This was a one-off for her, but supposedly something that had been done many, many times for Mercedes-Benz, although they did testify they had no policies and procedures to release these liens. I think her diligence has shown the moment she was there. I think the question for the jury was whether... What's your best case under Virginia law that the statute of limitations would not have started to run as of the time she paid off the loan? Your Honor, that the equitable estoppel would have stopped, would have stalled Mercedes-Benz. What's your best case under Virginia law? Because Virginia law determines that statutes of limitations are to be strictly enforced. Yes, Your Honor. Tell me what your best case is. Best case scenario or best case that I'm relying on, Your Honor? Best case from the Supreme Court of Virginia that would support your position. Your Honor, the best case would be that, again, the Latafe v. Commercial Industrial Construction case, the 1982 Virginia Supreme Court case. Again, to show, to establish equitable estoppel absent of showing a fraud or change of position and a detriment. Your Honor, to the extent that the statute of limitations would have applied, it was a question for the jury to show whether she reasonably relied on the fact that... Reasonably relied on the fact that it was her duty to go down and check the land records. Is this an argument you made below on equitable estoppel? Yes, it is, Your Honor. All right. Thank you. Thank you, Your Honor. I'm for the rebuttal time. Thank you. Mr. Mastro. Good morning, Your Honors. May it please the Court, Frank Mastro on behalf of the appellee Mercedes-Benz Credit Corporation. Your Honor, let me address first a point which was made by my opponent regarding the breach in the 2008 letter. That was... We have to keep in mind two things. One is that that letter coming in 2008, that's four years after the loan was paid off. So to the extent Ms. Poindexter is claiming any reliance, I mean, that's got to occur within the limitations period. Otherwise, you can't reasonably rely on something that occurs after limitations to bring it back into limitations. And then, as counsel pointed out, it does concern a different vehicle. A 2008 letter concerns a 2003, I think it is, Mercedes, the subject vehicles, a 2000 Audi, different VIN numbers, different account numbers, and it just dealt with the So there's no way there can be any reasonable reliance by Ms. Poindexter. Did you tell them at any point, that Poindexter's at any point that you'd released the lien? No, no. We never told Poindexter that the lien had been released. I think this is a case where both sides honestly forgot. I mean, the record reflects that in 2001, about six months after the original transaction, that Mercedes-Benz Credit Corporation got folded into a Daimler Chrysler entity. You say you forgot, but one thing people rely on financial institutions to do is to keep the record straight. And I think, wasn't it reasonable for her to assume that you'd released the lien once it no longer applied? Was it reasonable for her to assume? But she's got to do some diligence. I mean, just to assume that the lien had been released. You know, she's a lay person. You suggest that she has to go down to the, drive down to the Loudoun County Court and check the public records in that courthouse, or alternatively, hire an attorney to get this done. It bothers me here in that, you know, you should have released, you should have released the lien. And you didn't even release the lien when in May 2013, you were informed that the lien was discovered in the course of the Poindexter's attempt to refinance the home. And you still didn't release it, though. You know, from May 2013 to September 2013, the lien remained on the books after I understand you'd been informed of it. I mean, people rely on financial institutions. That's your job, that's your business, to keep people's records straight and not to saddle them with liens after there's no reason for the lien because the vehicle has been sold or they've got another car. The whole subject of the lien was not in the Poindexter's possession. Your Honor, in June of 2013, after Mercedes-Benz Financial Services had been contacted by the Poindexters, they contacted TD Auto Finance and TD Auto Finance sent a lien release to Ms. Poindexter's title company. For some reason, her title company never filed that. Then the lawsuit got filed, and then once the lawsuit got filed, Mercedes-Benz Financial again contacted TD Auto Finance, and then the lien was immediately filed. I mean, the lien release was immediately filed. So I want to correct that for the record. I don't know if that came up in the summary judgment plea, because I don't know that it was relevant to the decision below, but it's certainly in the deposition transcripts that are attached in the record extract. If you were the Poindexters, wouldn't you be pretty angry about what happened here? The lien was kept on the books, and who knows how damaging it can be to someone's credit? Not just an effort to refinance, but an effort to draw loans on one thing or another. The lien just hanging around for years after it's supposed to be removed. If you were the Poindexters, wouldn't you be pretty upset? Well, I might be a little, but I think the Poindexters, Ms. Poindexter testified between 2004 and 2012, she never made any effort to contact Mercedes-Benz, TD Auto Finance, any of these companies to determine whether or not the lien had been released. Even when the 2008 letter came in, it didn't trigger something that said, hey, maybe I ought to check and see if that other lien has been released. You know, did I get a letter like that? Let me check. I mean, nothing caused her to take any action until 2013. And then by that time, you know, unfortunately, the statute of limitations, certainly for the breach of contract, had expired because the statute of limitations accrues upon the breach, not when the damage has been discovered. And that's, you know, black letter of Virginia law. So in these circumstances, you know, it's unfortunate, but, you know, it's nine years too late. Or if it's a two-year limitation, it becomes seven years too late. So, you know, the statute of limitations has to be strictly enforced in this case. The question goes to the whole, even with the statute of limitations having run after five years, is what can you do after? That doesn't mean you can't do anything after five years. It's still on the property. Judge Wilkerson's question goes to once you know it's still there and you do nothing, even after the statute of limitation, is that a different type of action? Maybe not under the contract, but maybe. Well, if there was some showing that Mercedes-Benz affirmatively refused to remove the lien and said, yes, the lien is still there, we're going to enforce this lien. We believe we still have a lien. There's been no evidence in the record that there was any affirmative act by Mercedes-Benz Credit Corp to say, hey, we're still enforcing this lien. No, it's quite the opposite. As soon as they were contacted, they contacted TD Auto Finance because they were the entity that has to file the lien release as the legal successor and arranged for TD Auto Finance to first forward the lien release to the title company in June of 2013, and then ultimately, I believe it was October or November of 2013, when the lien release actually got filed in Loudoun County after the lawsuit was initiated. So never at any point, once they were contacted, did the defendants in this case say, hey, yeah, we still believe that lien exists. And I think that would be a different circumstance, because then you're affirming the existence of a lien. But if you're a consumer and you've repaid a loan, wouldn't you expect that the lender would remove or release any lien if you've repaid a loan? Do you have to say, you have to call them and say, hey, have you released the lien? I mean, wouldn't an ordinary consumer think, look, I've paid the loan, the debt has been fully satisfied? Well, I think it's like any other contractual situation where if another party has a duty under a contract and that party doesn't... The duty would be on you to release the lien, wouldn't it? Correct. The duty is absolutely on the security party to release the lien. And even under Virginia Code 5566.3, there's a 90-day time limit that's overlaid on this. I mean, you may squeeze out of this on a matter of law because of the statute of limitations, but it's shabby what happened here. It's shabby. I agree, Your Honor. I can't deny that it's an unfortunate set of circumstances. But those are the facts that we're dealing with in this case, Your Honor. People don't have times... She shouldn't have to check the land records to check the public records and take time out of her life to go on a record search or spend money to hire an attorney to check public records to see if you've done what you should have done. I understand, Your Honor. And like I said, had Mercedes Benz gotten a communication from her in the intervening eight years, I think we'd have a different case. But those aren't the facts that we're dealing with in this case. And I still don't understand when it was brought to your attention, you said, oh, this was a long period of time when she did nothing. Well, she had no reason to do anything during that period of time. But when she did have a reason to do something, which was in May 2013, and she was informed about the continued existence of the lien, she notified you in May 2013, and the lien still wasn't released. And it was only by the threat of litigation, which again, she shouldn't have had to undertake. Well, I think before this very simple act on your part was undertaken, it wasn't right. You don't treat people this way. Understood, Your Honor. I would just point out that when we were contacted in May of 2013, it was early June, it was mid-May and late May and early June is when the letter would reflect that we acted diligently and turned this around very quickly. Within less than a month that they had a lien release letter to the title company. And I think the record also reflects, although I don't know if this comes out in summary judgment, but that Ms. Poindexter did a, I don't know if it was a refinance, I think she took out a home equity line of credit in around 2005 and 2006, that time period. And the whole lien issue apparently wasn't discovered then. So, I mean, there was opportunity for her to discover it then, but it wasn't. So, you know, I think while it's certainly, you know, things could have been different on my client's end, I think things could have also been different on Ms. Poindexter's end. When you look at people's financial records, you want a loan, she might have said on the loan application that, you know, there's always a section on the loan about present indebtedness and are there any liens against your property and everything. If she would be applying for a loan, she would have answered that question, no. And then you would have thought, oh, this person's trying to defraud us. And the person is dissembling. All kinds of complications arise in people's lives when they, because they're, people are judged on the basis of their credit records in all kinds of different ways. When they apply for jobs, when they apply for loans, in all kinds of different ways, people want to know whether you meet your responsibilities and whether you're a creditworthy risk. And she's got this burden that she never should have had. I mean, I think, you know, we've, you know, we've addressed that, your Honor. I totally understand, you know, the point you're trying to make. Had Ms. Poindexter, you know, discovered that and requested, you know, a letter or contact someone else to say, hey, this lien isn't there, I'm sure my client would have done that. I mean, there's no evidence in the record that Mercedes-Benz ever, after learning that this lien was still on the books, attempted to enforce it. I'm not saying that it's malice or anything. I think, you know, the slander of title claim is just totally a non-starter. And I'm very dubious about the question of whether the Real Estate Settlement Act has any applicability here or the Virginia Consumer Protection Act. I don't see it. There are too many things that were thrown against the wall. I'm talking about a simple breach of contract theory, which I understand Virginia law is strict on the statute of limitations point. But, you know, it isn't a case that makes anybody feel very good. No, your Honor. No. I mean, I think we all wish the facts in this case could have been a little different. So, unless your Honors have anything else, I'll cede the rest of my time. Thank you. Your Honor, if I may, I understand your point about the slander of title. But I think that the discussion just showed what a definition of malice that the Virginia Supreme Court has approved in these cases. Malice doesn't have to be a sinister or corrupt motive. It can be a gross indifference or recklessness. Well, on the basis of this record, the most I see is negligence. I don't see the kind of malice here. That goes too far. And, you know, slander of title, I've seen very many of those succeed. And, you know, that seems to try to make this into a punitive damage case or malice case goes way beyond what I'm prepared to accept. Understood, your Honor. But with respect to the question of indifference, the title company, it wasn't Mrs. Poindexter's title company. It was the title company of the new lender, Chase Financial. So, right here, it's in the record. And as counsel said, Mercedes, once informed, didn't send it to the land records. The land records, they sent it to a third party that had no duty that did nothing with it. So, that's why. It was your client's lender. Potential lender. They were applying for the lender and there had been a title search. It wasn't their lender. It was Chase Finance. They wanted it to be their lender. And that lender, Chase Financial, had a title company do a title search. And that title company said, there's a lien. And so, when Mercedes was informed, they just sent a certificate of satisfaction to the title company, a title company that had no part, that had no affiliation with the Poindexters, other than the fact that they hoped one day that would be their lender. How is that? Wouldn't that be sort of normal that if there's going to be a closing on that, that the secured creditor sends a certificate of satisfaction? And when there's a closing, everything is recorded at one time. But, your Honor, the duty that they had, both under the Virginia Code, as well as the contract, wasn't to send it to, they could have been denied for a different reason. Perhaps Ms. Poindexter would have lost her job and Chase would have said, you're not someone that we want to take it to. There's no doubt they could have sent the certificate of satisfaction directly. To the court. To the courthouse with the recording fee for that. With the recording fee. They didn't make the argument that they didn't do something. No, no. I'm sorry, Your Honor. I wasn't trying to say that. My point was to show that an international corporation here who got this benefit for so many years, the indifference with the consumer's land, I mean, land is important. Yes, they did something, but it fell so far below what they were supposed to do. And because of this, she suffered damages. And I understand, Your Honor's point about overreaching and trying to get something, to get too much. But under every cause of action she could possibly have, please remove the certificate. Please file a certificate under Virginia 5530. Slander of title. A continuing slander on her title for every breach of contract. From the first instance, as I understand, initially this was an installment loan? It was a car loan, yes, sir. And then it was your client that sought to get the deed of trust for tax purposes? No, it was a program that Mercedes was offering. So they sent her a letter asking her if she wanted to participate. She didn't. Yes, they asked and she said yes. And she did it for tax purposes? For tax purposes, yes, sir. It's an unusual kind of arrangement. It is very unusual. It's my understanding, well, through discovery, that it's no longer something that Mercedes offers. I'm not sure you could do it. I think you're... In typical real estate type situations, as odd as this seems, it does happen that someone, even in a real estate transaction, a lien can be left on a house without having been canceled by the trustee or someone there. So I mean, that part about it is the reason for the 90-day rule in Virginia. So you can come back and say, well, you'll get $500 if they don't do it in such and such a date. Yes, sir. Which sort of incentivizes the person with the lien on it to go say, well, I can get $500 now that you haven't canceled on my house. Yes, sir. But you didn't do that, of course, within that 90-day period. And then you're sort of there with this incumbents on your house. And Judge Wilkins is correct. Nobody wants to have an incumbents on your house. But the law is kind of funny on that kind of thing, particularly in real estate. That thing is on your house. And even though you don't have a duty to go and check it out, if someone has something on your house, you ought to want to know it's not up there anymore before a series of nine years pass. I mean, you would think. Understood, Your Honor. But the moment that it was- There still is a consumer beware type law that goes on. And I'm not so sure it tracks in the- that's the reason for the statute of limitations. You have five years. That's you get the whole time period in there under this contract to deal. But if you do nothing for nine years- What should she have done, Your Honor? Go to the land records? I mean, would people- Is it the duty of consumers to- It's on her house. She's living there. She should probably check to see if there's anything on her house. Yes, sir. But I made a mortgage loan. I didn't then run to Fairfax County to make sure it wasn't still on my home, that my refinance or my equity. I mean, that's on the lender. That's on the- and that's why the statute says when you- I've got a title insurer up there that's going to make sure that someone takes it off. You don't have it in this type of situation. That's true, Your Honor. That's a good point. There wasn't anything- It's an unusual nature of what's going on here. It is. It's very unusual. It's a problem. And ultimately, what happens is, when you get to the end of the day on this whole thing that's going on, it's off the house. It is now. She has a loan. She's paying about eight more dollars a month. We keep saying the $8, Your Honor. She paid- for 13 months, she paid the higher rate. She paid title closing. She paid inspection. The $8, I think it's very- a sexy figure. Oh, it's only $8. Why are you here in federal court? Why did you come to the Court of Appeals? It's more than $8. But summary judgment was on liability and not on damages. But she suffered much more and has than $8, damage-wise. I'm sorry, Your Honor. I didn't mean to interrupt. No. All of which she doesn't get if the statute of limitations is run. True, Your Honor. That goes back to the initial point that Judge Agee is making here under Virginia law. That's pretty hard stuff against you. I mean, equities aside, in terms of how bad it is, you've got to say this injury occurred when they didn't do what they were supposed to do. Yes, sir. And that's why, as her counsel, I also looked at the Real Estate Settlement Procedures Act, which states that once a written request has been made, that then is- there's, I think, no dispute that she was within the statute of limitations for that. There were four qualified written requests made. And the judge below found that there were zero. That, Your Honor, is her remedy in the case if the Virginia law is too harsh on the breach of I see my time has expired, sir. Thank you. Thank you, sir.
judges: J. Harvie Wilkinson III, G. Steven Agee, James A. Wynn, Jr.